IN THE UNITED STATES DISTRICT COURT
FOR THE DISTIRCT OF COLORADO

| | |
|---|---|
| **BONNIE MASER**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**COMMONSPIRIT HEALTH,**<br><br>Defendant. | Case No. 1:23-cv-01073-RSM-SKC<br><br>Honorable Raymond P. Moore |

## COMMONSPIRIT HEALTH'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

**COME NOW**, Defendant CommonSpirit Health, by and through its undersigned counsel, Kennedys CMK, LLP, respectfully moves this court to dismiss Plaintiff's First Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. In support thereof, CommonSpirit states a follows:

### INTRODUCTION

On or about April 6, 2023, plaintiff was notified by CommonSpirit that she was among a group of individuals whose personal/medical information may have been impacted as a result of a criminal ransomware attack. After a complaint followed three weeks later, CommonSpirit advised plaintiff that it was subject to dismissal on several grounds, including failure to allege an injury-in-fact-sufficient to satisfy Article III standing. Plaintiff agreed to amend the complaint solely to address that issue and filed the First Amended Complaint (FAC). However, plaintiff still fails to allege Article III standing, and the FAC is subject to dismissal on that, and numerous other grounds.

**First**, Article III standing can only exist if an alleged injury is fairly traceable to a data breach, or if there is a non-speculative, imminent risk of injury. The FAC demonstrates neither. While plaintiff alleges that she suffered bank fraud, she fails to link that fraud to the cyberattack. The FAC merely describes how on an *unspecified* date, an *unspecified* person used *unspecified* PII to access a bank account at an *unspecified* credit union by using an *unspecified* method to make *unspecified* fraudulent charges. That sheer lack of specificity alone is fatal to the FAC and is further compounded by the FAC's failure to plausibly allege how a criminal could have used the personal data at issue here (all non-banking and non-financial) to access an existing bank account. To be clear, no passwords, security questions, log-in information, bank, or financial information is alleged to have been compromised. The complete lack of any alleged causal connection between the compromised data and access to a purported bank account cannot support a traceable injury, or a non-speculative, imminent risk of injury to survive dismissal.

**Second**, plaintiff fails to allege the requisite amount in controversy to confer subject matter jurisdiction under CAFA. To do so, a plaintiff must allege a plausible, good faith estimate of how the amount in controversy exceeds $5 million. Plaintiff fails to do that.

**Third**, plaintiff does not allege a single fact to support her claim that CommonSpirit breached a duty owed, as required to support her negligence claim. Conclusory, unsupported allegations that CommonSpirit acted unreasonably are insufficient to support a claim for negligence in Colorado. In addition, plaintiff fails to set forth any injury that resulted from CommonSpirit's alleged delay in notification. That too, subjects the claim to dismissal.

**Fourth,** plaintiff's claim for breach of an implied contract fails because she does not allege any facts to support her conclusion that a "meeting of the minds occurred" between her and

CommonSpirit with respect to data security. In Colorado, the law is clear that without such allegations, an implied-in-fact contract claim fails.

**Fifth**, plaintiff's claim for a breach of the duty of good faith and fair dealing fails because it is dependent on the existence of a contract. Since no contract exists, neither can the claim.

**Sixth**, the FAC's claim for unjust enrichment fails because it does not allege any improper benefit conferred upon CommonSpirit. Nowhere is it claimed by plaintiff that she paid CommonSpirit for data security, or, for that matter, anything else that she failed to receive. For that reason alone, the unjust enrichment claim fails under settled Colorado law.

## OVERVIEW AND STATEMENT OF ALLEGED FACTS

CommonSpirit suffered a criminal ransomware attack, which ultimately impacted certain individuals' information. FAC ¶ 4. On or about April 6, 2023, CommonSpirit notified plaintiff, and others, that she was among those individuals. *Id.* Approximately three weeks later, plaintiff filed the complaint. *See* ECF No. 1. On June 22, 2023, the parties conferred pursuant to Rule N(2)(a) of this court's Civil Practice Standards. CommonSpirit advised plaintiff that it intended to move to dismiss the complaint because (i) plaintiff does not have Article III standing because an injury-in-fact was not alleged; (ii) the CAFA amount-in-controversy is not properly alleged; (iii) plaintiff failed to allege that CommonSpirit breached a duty owed sufficient to support a negligence claim; (iv) mutual assent was not pled in support of the breach of implied contract and duty of good faith and fair dealing claims; and because (iv) the unjust enrichment claim did not allege any improper benefit conferred upon CommonSpirit. Plaintiff disagreed, but indicated that an amended complaint would be filed limited to setting forth additional facts to allegedly support Article III standing. During a meet and confer that took place on August 4, 2023, Plaintiff indicated that no further amendments to the complaint would be made.

The operative FAC was filed on July 3, 2023. *See* ECF 12-1. In the FAC, plaintiff alleges that as a result of the data breach, cybercriminals were able to access her bank account at a local credit union, drain the account and cause $3,000 in fraudulent charges. *Id.* ¶ 21. She also claims to have suffered severe panic attacks as a result of stress related to the data breach. *Id.* ¶ 22. In addition, plaintiff alleges that she has had to spend "time dealing with the consequences" of the incident, including exploring credit monitoring and identity theft insurance options, self-monitoring accounts and seeking legal counsel options for mitigating its effects. *Id.* ¶ 23. Finally, plaintiff claims to have suffered injury in the form of damages to and diminution in the value of her PII, *id.* at 24, and that she suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting the cyberattack. *Id.*

The FAC asserts four counts – negligence, breach of implied contract, breach of the covenant of good faith and fair dealing and unjust enrichment.

## **GOVERNING STANDARDS**

Although a court must treat a complaint's factual allegations as true in a Rule 12(b) motion, the allegations must be well-pleaded and "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim must be "plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Legal conclusions and conclusory allegations are not entitled to deference or assumption of truth. *Id.* at 680-81. Further, at the pleading stage, a plaintiff must allege facts that "'plausibly' state that the elements of standing are met." *Holmes v. Villages Tri-Cnty. Med. Ctr., Inc.*, 2023 WL 315019, at *3 (M.D. Fla. Jan. 19, 2023). Plaintiff fails to meet that burden.

4

## ARGUMENT

### I.   PLANITFF DOES NOT HAVE ARTICLE III STANDING

To establish standing, a plaintiff has the burden to show that she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial ruling." *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1064 (7th Cir. 2020) (internal quotation marks omitted). To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical. *Spokeo, Inc. v. Robins*, 136 S. Ct. at 1547 (internal quotation marks omitted). *Id.* at 2210–11.

#### A.   Plaintiff's Alleged Injury is Not Fairly Traceable to the Ransomware Attack

As noted, the second essential prong of the standing analysis is whether the alleged injury-in-fact is "fairly traceable" the alleged unlawful conduct. *See Lujan*, 504 U.S. 555, 560 (1992); *see also Spoke*o, 136 S.Ct. at 1547 (an alleged injury-in-fact must also be "fairly traceable to the challenged conduct of the defendant."). Here, the FAC does not set forth any facts to support traceability of the alleged injury to the cyberattack and is further doomed by its failure to plausibly allege how a criminal could have used plaintiff's compromised PII/PHI –most of which is related to medical services, and none of which is bank or financial information – to engage in the bank fraud alleged. Nowhere in the FAC does plaintiff draw a connection between any data element compromised and a data element used to engage in the alleged fraud. Courts consistently deny standing when those required, plausible allegations are absent.

The matter of *Blood v. Labette Cnty. Med. Ctr.*, No. 522CV04036HLTKGG, 2022 WL 11745549 (D. Kan. Oct. 20, 2022) is instructive. In *Blood*, plaintiffs' PHI and PII, including their names, social security numbers, and medical treatment/diagnosis information was compromised in a data breach. *Id* at *1. Plaintiffs claimed that cybercriminals were able to access and make

5

unauthorized charges on their bank accounts. *Id.* The Court found that the plaintiffs did not have Article III standing because they failed to plead facts suggesting how the compromise of their names, social security numbers or medical information "***would enable someone to make unauthorized charges on an existing account*** (instead of, for example, opening a new account)." *Id.* at *5 (emphasis supplied). The court explained:

> [Plaintiffs] have not alleged that someone gained access to their bank account number or debit card number(s) through the breach. They have not offered a plausible explanation for how someone accessed their existing bank account using the information stolen from Defendant. To assume someone could have done so with the allegedly stolen information (most of which is healthcare-related) requires a level of speculation and conjecture this Court is unwilling to accept. Without a plausible, non-speculative connection from the stolen information to the [plaintiffs'] existing bank account, the [plaintiffs] cannot show a substantial likelihood that Defendant's action caused their injury.

*Id.* The same holds true here. As in *Blood*, plaintiff does not allege that her bank or financial information was involved in the breach. She does not claim that her credit union account number passwords, log-in information, or security questions were compromised. Nor does she offer any plausible explanation of how the information which was compromised in the cyberattack could be used to gain access to the account at issue. Without those allegations, standing cannot exist. *See e.g., In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 32 (D.D.C. 2014) (plaintiffs who alleged that money was withdrawn from an existing bank account lacked standing because they proffered no plausible explanation for how thief would have acquired their banking information); *In re Uber Techs., Inc., Data Sec. Breach Litig.*, No. 18-CV-182970, 2019 WL 6522843, at *6 (C.D. Cal. Aug. 19, 2019) (plaintiff's alleged injuries were not "fairly traceable" to data breach because it was not apparent "how the disclosure of Plaintiff's basic contact information and driver's license number could be plausibly used to gain access to his tax

6

return or make fraudulent charges on his credit and debit cards"). Similarly, plaintiff here *does not* describe the nature of the claimed fraudulent charges; *does not* indicate the name or address of the location where the fraud occurred; *does not* describe how the fraud occurred; and *does not* identify the pieces of PII that were used to engage in the fraud. Thus, standing does not exist.

### B. No Imminent Injury is Alleged

Plaintiff also alleges that she "suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse" of her information. FAC ¶ 25. However, in *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013), the Supreme Court made clear that "allegations of possible future injury" or even an "objectively reasonable likelihood" of future injury are insufficient to confer standing. *Clapper*, 568 U.S. at 408-409. Rather, a future injury can only constitute an Article III injury-in-fact only "if the threatened injury is certainly impending." *Id*. Further, claims of increased risk of harm *only* support standing for injunctive relief. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210-11 (2021) (limiting *Clapper*). A plaintiff who seeks *injunctive relief* to prevent future harm can only satisfy the injury-in-fact requirement by asserting a "risk of future harm," that "is sufficiently imminent and substantial." *Id.* at 2210. For damages, the mere risk of future harm "cannot qualify as a concrete harm ... unless the exposure to the risk of future harm itself causes a *separate* concrete harm." *Id.*

Here (putting aside plaintiff's insufficient claim of bank fraud), plaintiff fails to set forth any facts that demonstrate that an imminent injury is certainly impending. To the contrary, the FAC is replete with the type of speculative claims of future injury that courts reject:

- "Representative Plaintiff and Class Members are, thus, *left to speculate* as to where their PHI/PII ended up, who has used it and for what potentially nefarious purposes." FAC ¶ 46 (emphasis supplied).

7

- "Indeed, [Representative Plaintiff and Class Members] *are left to further speculate* as to the full impact of the Data Breach … *Id.* (emphasis supplied). *Id.*

- "Representative Plaintiff's and Class Members' PHI/PII *may end up* for sale on the dark web, or simply fall into the hands of companies that will use the detailed PHI/PII for targeted marketing… *Id.* ¶ 47 (emphasis supplied).

- The fraudulent activity resulting from the Data Breach *may not come to light for years*. *Id*. ¶ 82 (emphasis supplied).

Plaintiff's concession that she is left to "speculate" as to what "may" happen to her data, potentially years from now, is a death-knell to the FAC. The Supreme Court specially instructed in *Clapper* that a plaintiff may not rely on a "speculative chain of possibilities that does not establish that their potential injury is certainly impending." *Clapper*, 133 S. Ct. at 1141. The FAC suffers from the same infirmities as an untold number of data breach complaints throughout the country that have been dismissed because of similar speculation. It should suffer the same fate.

For example, in a recent matter from Florida, a federal district court denied standing to plaintiffs based upon allegations similar to those at bar. In *Holmes v. Villages Tri-Cnty. Med. Ctr., Inc.*, the plaintiffs, *as here*, were notified that a ransomware attack at a hospital impacted their PHI and PII. *Holmes v. Villages Tri-Cnty. Med. Ctr., Inc.*, No. 5:21-CV-508-JA-PRL, 2023 WL 315019 at *1 (M.D. Fla. Jan. 19, 2023). *As here*, the complaint was laced with speculation, including allegations identical to plaintiff's that the "information may end up for sale on the dark web" or be used for "targeted marketing." *Id.* The *Holmes* court found that plaintiffs failed to demonstrate a substantial or imminent risk if harm, as irrespective of "whether the information Plaintiffs rely on is social security numbers or medical information, however, their allegations are speculative and based on what 'may' have happened." *Id* at *5. The same holds true here. *See also Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) (allegations that rely on speculation are insufficient

8

to support standing); *In re SuperValu, Inc.*, 870 F.3d 763, 771 (8th Cir. 2017) (same); *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1340–44 (11th Cir. 2021) (same); *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 301, 303–05 (2d Cir. 2021) (same).

### C.   Plaintiff's Allegations of Mitigation Expenses Do Not Create Standing

Plaintiffs' claim of mitigation expenses (exploring credit monitoring and identity theft insurance options, self- monitoring accounts and seeking legal counsel), FAC ¶ 23, cannot support standing. Putting aside that the FAC is barren of any facts substantiating those naked conclusions, courts reject mitigation expenses to create standing when there is no imminent harm. *See e.g. Clapper*, 568 U.S. at 416 (a party cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending); *Legg*, 2021 WL 5772496, at *7 (same); *C.C. v. Meta-Data Inc.,* No. 21-2301-DDC-GEB, 2022 WL 970862 at *8 (D. Kan. Mar. 31, 2022) (same); *Tsao*, 986 F.3d at 1344–45 (same); *In re Sci. Applications Int'l Corp.,* 45 F. Supp. 3d at 26 (same) *In re SuperValu, Inc.*, 870 F.3d 763, 769 (8th Cir. 2017) (same) *Reilly*, 664 F.3d at 46 (same); *Chambliss v. Carefirst, Inc*., 189 F. Supp. 3d 564, 571 (D. Md. 2016) (same). Thus, the mitigation efforts purportedly undertaken by plaintiff, which were done so in the absence of imminent harm, cannot support standing.

### D.   Plaintiffs Other Purported Injuries Cannot Establish Standing

Plaintiff's attempts to establish injury "in the form of damages to and diminution in the value of" personal information, FAC ¶ 24, panic attacks and "anxiety and increased concerns for the loss of privacy, as well as anxiety over the impact of cybercriminals accessing, using, and selling" her PII, *Id*. ¶ 22, are insufficient and can be easily dispatched.

First, plaintiff fails to explain how the value of her personal information was diminished. She does not describe what information she purportedly provided to CommonSpirit, what the value

9

of that information was prior to the incident, or that she attempted to sell it at a decreased value. Those deficiencies preclude standing. *See e.g., Legg*, 574 F. Supp. 3d at 994 (no standing where "Plaintiff fails to allege that he attempted to sell his personal information and was forced to accept a decreased price"); *Green v. eBay Inc.*, No. CIV.A. 14-1688, 2015 WL 2066531, at *5 n. 59 (E.D. La. May 4, 2015) (same); *In re Practicefirst data Breach Litigation*, 2022 WL 354544, at *7 (same."); *Chambliss*, 189 F. Supp. 3d, at 572 (finding that plaintiffs had "failed to allege an injury in fact based on any diminution of the value of their personal information."); *Wallace v. Health Quest Sys.*, 20 CV 545, 2021 U.S. Dist. LEXIS 54557 (S.D.N.Y. Mar. 22, 2012) (no injury where plaintiffs provided speculative allegations how their private information diminished in value.).

Second, plaintiffs' conclusory claims of anxiety, panic attacks and emotional distress cannot create standing in the absence of imminent injury. Arguments to the contrary have been rejected by every court that has considered the issue. *See e.g. Clapper*, 568 U.S., at 417 (holding fear of surveillance insufficient to confer standing); *Reilly*, 664 F.3d, at 42 (holding plaintiffs failed to allege a concrete injury, including emotional distress, because they didn't allege any misuse of their data); *Simpson v. Revco Sols., Inc.*, No. 22-CV-00483-JPG-1, 2022 WL 17582742, at *3 (S.D. Ill. Dec. 12, 2022) (finding that the plaintiff's allegations of "undue stress, anxiety, confusion, annoyance, and emotional distress do not amount to a concrete injury to satisfy Article III standing."); *Wilkinson v. Olympia Dev. of Mich. LLC*, No. 22-10714, 2022 WL 4870781, at *3 (E.D. Mich. Oct. 3, 2022) (finding that "bare allegations of stress, fear, anger, and frustration do not amount to a concrete injury.") (internal quotations omitted); *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 66 (2d Cir. 2021) (finding that a "perfunctory allegation of emotional distress is … insufficient to plausibly allege constitutional standing.").

10

Plaintiff also alleges that CommonSpirit unreasonably delayed its breach notification, FAC ¶ 107, but does not state any harm suffered as a result. That is also insufficient to establish injury-in-fact. *See In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d, 1197, 1218 (N.D. Cal. 2014) (Plaintiff failed to allege injury-in-fact because Plaintiff had not traced any injury from the delayed notification); *Remijas* 794 F.3d at 695 ("delay in notification," on its own, "is not a cognizable injury" that confers Article III standing on a plaintiff) (internal citation omitted).

## II. PLAINTIFF FAILED TO PLEAD A CAFA AMOUNT IN CONTROVERSY

Plaintiff parrots CAFA's requirement that the amount "amount in controversy exceeds the value of $5 million, exclusive of interest and costs," and allege nothing more. FAC ¶ 10. That is not enough to vest this court with subject matter jurisdiction. *See Rios v. Corecivic of Tennessee, LLC*, No. 21-CV-02295-WJM-STV, 2022 WL 18586897, at *2 (D. Colo. Feb. 1, 2022) ("Plaintiff's conclusory allegation that the amount in controversy exceeds $5,000,000 is insufficient, without supporting factual allegations, to establish that the amount in controversy requirement under CAFA has been met."). For this reason, too, the FAC should be dismissed.

## III. PLAINTIFF'S FAILURE TO STATE A CLAIM ON WHICH RELIEF MAY BE GRANTED

### A. Plaintiff 's Does Not Allege a Breached Duty to Support Her Negligence Claim

A claim of negligence in Colorado requires that a plaintiff sufficiently plead that the defendant owed a legal duty of care; the defendant breached that duty; the plaintiff was injured; and that the defendant's breach caused that injury. *E.g., Ryder v. Mitchell,* 54 P.3d 885, 889 (Colo.2002). Conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Myers v. Alliance for Affordable Services*, 371 Fed.Appx 950, 959 (10th Cir. 2010) (affirming district court dismissal of a negligence claim). Here, at a minimum, plaintiff has not sufficiently plead that a duty owed to her was breached, and the claim

11

is therefore subject to dismissal. Her conclusory assertion that CommonSpirit breached a duty "by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard" her data, FAC ¶ 99, is insufficient. No factual allegations are offered to support that speculative allegation. The matter of *In re Waste Mgmt. Data Breach Litig.*, No. 21CV6147 (DLC), 2022 WL 561734, at *1 (S.D.N.Y. Feb. 24, 2022) is illustrative.

In *In re Waste Mgmt. Data Breach Litig*, plaintiffs alleged that an unauthorized actor infiltrated Waste Management's computer network, gaining access to its employees' PII, such as names, social security numbers, dates of birth, and driver's license numbers. *Id*. at *1. Additionally, several plaintiffs alleged that they were victims of apparent identity theft, in which unknown actors attempted to make purchases or collect government benefits in their names. *Id*. As here, plaintiffs asserted a cause of action for negligence based upon conclusory general allegations that Waste Management breached a duty of care by not taking reasonable measures to protect the data that was allegedly breached. The court dismissed the claim as threadbare:

> Nevertheless, the [complaint] fails to state a claim for negligence, because it does not plausibly allege that Waste Management breached any duty of care. Although the [complaint] contains many conclusory allegations that Waste Management failed to take reasonable measures to protect its data, [it] pleads *no facts regarding any specific measures that Waste Management did or didn't take*, *nor does it contain any allegations regarding the manner in which their systems were breached*. [Emphasis added.]

*Waste Mgmt.*, 2022 WL 561734, at *4. Because plaintiffs failed to "plausibly allege not only that there was a data breach, but that the breach was caused by Waste Management's unreasonable conduct," the court dismissed the negligence claim as conclusory. *Id.* at *4-5. ("A conclusory allegation that the defendant acted unreasonably is insufficient to state a claim for negligence") (citing *Iqbal*, 556 U.S. at 678). Here too, plaintiff asserts a claim based in negligence without any allegations regarding a specific act or omission CommonSpirit engaged in with respect

12

to its cybersecurity practices. Merely claiming that CommonSpirit was the victim of a cyberattack is not sufficient to plausibly allege that CommonSpirit was negligent with respect to its security practices. *See e.g. Maag v. U.S. Bank, Nat'l Ass'n*, 2021 WL 5605278, at *2 (S.D. Cal. Apr. 8, 2021) (dismissing negligence claim because plaintiff "only makes unsupported allegations that his PII was compromised because defendant failed to 'implement and maintain reasonable security procedures and practices'"); *Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 50 (D. Ariz. 2021) ("[Plaintiffs] allege that two data breaches in a year necessarily implies that [Defendants'] data security was inadequate. That is not enough."); *Anderson v. Kimpton Hotel & Rest. Grp., LLC*, 2019 WL 3753308, at *5 (N.D. Cal. Aug. 8, 2019) (dismissing claim where plaintiffs only alleged defendant "failed 'to implement and maintain reasonable security measures.).

Finally, plaintiff also bases her negligence claim on CommonSpirit purportedly breaching a duty to her "by waiting months after learning of the Data Breach to notify" her of it. FAC ¶ 107. That claim fails as a matter of law because plaintiff does not set forth any harm or injury which she suffered because of the claimed delay. *See e. g. Fox v. Iowa Health Sys.*, 399 F. Supp. 3d 780, 803 (W.D. Wis. 2019) (claim for delayed notification of the breach fails due to pleading deficiencies where plaintiffs did not plead actual damages suffered as a result); *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 16-00014, 2016 WL 6523428, at *7 (S.D. Cal. Nov. 3, 2016) (same); *In re Sony Gaming Networks*, 996 F. Supp. 2d 942, 1010 (S.D. Cal. 2014) same).

### B.   Plaintiffs Do Not Allege that an Implied Contract Existed

Under Colorado law, "an agreement implied in fact is 'founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Scarlett v. Air Methods Corp.*, 922 F.3d 1053, 1064 (10th Cir. 2019). Plaintiff has failed to meet the minimum pleading requirements to support her implied contract claim. In particular, plaintiff fails to allege any facts to support her conclusory (and sole) allegation that a "meeting of the minds

occurred' when plaintiff provided here information to CommonSpirit in exchange for its protection. FAC ¶ 123. No mutual assent or specific actions on the part of CommonSpirit from which an agreement can be inferred are alleged. Without any factual allegations to support her bare conclusion of a meeting of the minds, Colorado law requires that plaintiff's claim be dismissed. *See e.g., Blood*, 2022 WL 11745549, at *8 (in a data breach matter, questioning "how there could have been an implied contract with no allegation of mutual assent by Defendant"); *Johnson v. Am. Honda Motor Co. Inc.*, 2016 WL 3078995, at *5 (D. Colo. May 18, 2016) (no breach of implied contract claim without allegations supporting a "meeting of the minds" by the parties); *Winter v. Indus. Claim Appeals Off.*, 321 P.3d 609, 614 (same); *Autotech Techs., LP v. Palmer Drives Controls & Sys., Inc.*, 2020 WL 1974759, at *4 (D. Colo. Apr. 24, 2020) (same).

### C.     Plaintiffs Do Not Allege a Breach of the Duty of Good Faith and Fair Dealing

The duty of good faith and fair dealing is only present in fulfilling the terms of a valid contract. *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.,* 872 P.2d 1359, 1362 (Colo.Ct.App.1994). Because plaintiff has failed to allege that a contract existed, see Section III(B), *supra,* her claim for a breach of the duty of good faith and fair dealing fails as well.

### D.     Plaintiff Does Not Allege that CommonSpirit was Unjustly Enriched

Under Colorado law, a claim for unjust enrichment must allege that "(1) a benefit was conferred on the defendant by the plaintiff; (2) the benefit was appreciated by the defendant; and (3) the benefit was accepted by the defendant under such circumstances that it would be inequitable for it to be retained without payment of its value." *Tan v. Det-CO, Inc.*, 2018 WL 922133, at *12 (D. Colo. Feb. 15, 2018) (quoting *Humphrey v. O'Connor*, 940 P.2d 1015, 1021 (Colo. App. 1996)). Plaintiff alleges, in conclusory fashion, that plaintiff "paid for products and/or health care services" and CommonSpirit failed to provide plaintiff with information regarding its information

14

systems, and therefore "received profits, benefits, and compensation by improper means." FAC¶¶ 138-139. Those allegations are insufficient to support plaintiff's claim.

In particular, the FAC fails to allege any improper benefit conferred upon CommonSpirit. Plaintiff alleges that she paid for "products and/or health care services," but *does not allege* that she failed to receive those products and services. Plaintiff does not allege that she paid CommonSpirit for data security or, for that that matter, anything else which she did not receive. For that reason alone, the FAC's allegations fall far short of the facial plausibility required to withstand dismissal. *Iqbal*, 556 U.S. at 679; *see also In re Arthur J. Gallagher Data Breach Litig.*, 2022 WL 4535092, at *10 (N.D. Ill. Sept. 28, 2022) ("plaintiffs have not plausibly alleged Defendants' retention of a benefit conferred by plaintiffs. If anything, the [] complaint suggests that third-party hackers, not Defendants, are the ones who benefitted from the Data Breach.")

## CONCLUSION

For the reasons set forth herein, CommonSpirit respectfully moves for dismissal of this lawsuit with prejudice.

**Dated:** August 11, 2023

                                    Respectfully Submitted,

                                    *s/Daniel S. Marvin*
                                    Daniel S. Marvin
                                    **KENNEDYS CMK LLP**
                                    570 Lexington Avenue, 8th Floor
                                    New York, NY 10021
                                    Telephone: 646-625-4030
                                    Email: Daniel.Marvin@kennedyslaw.com

                                    **Attorneys for CommonSpirit Health**

15

**CERTIFICATE OF SERVICE**

The undersigned, an attorney of record for the Defendant, hereby certifies that on August 11, 2023, he served a copy of the foregoing DEFENDANT'S MOTION TO DISMISS on counsel of record listed below by electronic means pursuant to Electronic Case Filing (ECF):

Molly Munson Cherala, Esq.
Cole & Van Note
555 12th Street, Suite 2100
Oakland, CA 94607
mmc@colevannote.com

*s/Daniel S. Marvin*
Daniel Marvin

*Counsel for Defendant*

1